**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **QUINCY BERNARD JONES,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:21-CV-351 (MTT)** |
| | ) | |
| **FEATHERSTONE HOMEOWNERS** | ) | |
| **ASSOCIATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

Pro se Plaintiff Quincy Bernard Jones contends Defendant Featherstone Homeowners Association failed to install railings on the retaining wall in front of his duplex after he requested they do so as an accommodation and/or modification under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619.  Doc. 6.  Specifically, Jones claims the lack of retaining wall railings "triggered" his "paranoia," causing him to fear future injury when "playing catch" with his relatives.  *Id.* at 6.  Featherstone now moves for summary judgment.  Doc. 40.  For the reasons that follow, that motion (Doc. 40) is **GRANTED**.

## I. BACKGROUND[1]

Jones moved into a duplex unit within the Featherstone Homeowners Association community in 2014.  Doc. 40-14 ¶ 1.  Jones's unit, and others like it, have a retaining wall that separates the front yard of the unit from a sidewalk that abuts the parking lot.  Docs. 40-14 ¶ 2; 40-4.  Each unit also has a set of stairs that connects the sidewalk with the front yard of the duplex unit.  Docs. 40-14 ¶ 2; 40-4.  Although the stairs have a railing "to assist individuals traversing the stairs," there are no railings on the retaining walls.  Docs. 40-14 ¶ 2; 40-4.

The railings, or lack thereof, were not an issue for Jones until November 2020, when he fell walking up the stairs in front of his unit.  Doc. 40-14 ¶ 3.  That fall allegedly triggered Jones's paranoia and anxiety, and although the stairs had a railing, Jones's fall led Jones to believe that the retaining wall should also have a railing.  *Id.*  On May 6,

---

[1] Unless otherwise stated, all facts are undisputed.  Cognizant of Jones's pro se status, following Featherstone's motion for summary judgment, the Court advised Jones of his duty to respond to the motion for summary judgment, including that he could not rely on the pleadings but instead must present evidence to establish a genuine issue of material fact and must provide his own statement of material facts and respond to Featherstone's.  Doc. 41.  Despite this notice, Jones's response failed to meet these requirements.  *See* Docs. 42; 42-7.  Not only did Jones not respond to Featherstone's asserted facts, but he failed to provide his own statement of material facts that adequately cited to the record.  Doc. 42-7.  Rather, most of Jones's facts re-stated conclusory arguments from his complaint.  *Id.*  And by and large, Jones has presented no evidence, outside of his own unsworn allegations and a threadbare declaration, to support his claims.  *See id.*  Thus, Jones has "fail[ed] to properly support an assertion of fact [and] fail[ed] to properly address [Featherstone's] assertion of fact as required by [Fed. R. Civ. P.] 56(c)," and, accordingly, "the court may … consider [those] facts undisputed for purposes of the motion" pursuant to Rule 56(e)(2).  Moreover, pursuant to Local Rule 56, those material facts asserted by Featherstone, "which [Jones has] not specifically controverted by specific citation to particular parts of materials in the record," are deemed to be admitted.  M.D. Ga. L.R. 56 ("All material facts contained in the movant's statement [of material facts] which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.").  However, the Court has still "review[ed] the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact."  *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (quotation marks omitted).  And despite the deficiencies in Jones's response, because Jones is proceeding pro se, and because summary judgment would lead to dismissal of his claims with prejudice, the Court has fully analyzed Jones's claims for relief regardless of these failings and insufficiencies in his response.  *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  Therefore, if evidence in the record shows that a fact is disputed, the Court draws all justifiable inferences in Jones's favor for purposes of summary judgment.

2021, Jones sent Featherstone a letter that requested the rails "be restored" on the retaining wall outside of his unit so he could enjoy the front yard without fear of falling from the wall, a fear that, according to Jones, was caused by his paranoia and schizophrenia.  *Id.* ¶¶ 4-5.  Jones also alleges he sent follow-up correspondence to Featherstone on June 7, 2021 and July 9, 2021, although Featherstone maintains they never received any of the three letters until they were served with Jones's amended complaint on February 18, 2022.[2]  *Id.* ¶¶ 7-9.

Jones's amended complaint contends he is disabled and suffers from paranoia, bipolar disorder, schizophrenia, depression, chronic obstructive pulmonary disease ("COPD") and asthma.  *Id.* ¶ 10 (citing Doc. 6 at 2, 7).  But, in his deposition, Jones only claimed to have anxiety, paranoia, schizophrenia, COPD, and asthma.  *Id.* ¶ 11 (citing Doc. 35 at 50:19-23).  In any event, the thrust of Jones's ailments appeared to be mental rather than physical.  *See id.* ¶¶ 12-14.  As to who would bear the cost of Jones's desired railings, Jones's position has been inconsistent.  *See* Doc. 40-14 ¶¶ 22-25.  But, as Jones's deposition made clear, he "has not received a quote for the cost of the railing, nor has he saved any money in furtherance of his purported goal of obtaining rails."  *Id.* ¶ 24 (citing Doc. 35 at 93:19-94:5. 96:3-16).  And on October 17, 2022—the day discovery closed—Jones took the position that "I'm not helping [Featherstone] pay for nothing."[3]  *Id.* ¶ 25 (quoting Doc. 40-9).

---

[2] Before service of his complaint on Featherstone, Jones moved to amend pursuant to Federal Rule of Civil Procedure 15.  Docs. 7; 14.  Featherstone accepted Jones's amended complaint (Doc. 6) as the operative pleading and only responded to that complaint.  Doc. 17 at 1 n.1.  Accordingly, the Court considered Jones's motion to amend unopposed and granted that motion.  Doc. 19.

[3] Jones also served Featherstone with his "Third Requests for Production," the day discovery closed.  Doc. 38-4.  Featherstone moved to quash Jones's "Third Requests for Production," and Jones moved to strike Featherstone's motion to quash.  Docs. 38; 39.  Bluster and form aside, Jones acknowledges "he had ample time to request[] these documents" prior to the last day of discovery but failed to do so.  Doc.

On October 20, 2022, three days after discovery had closed, Jones emailed Featherstone's counsel a note signed by a nurse practitioner, but not authenticated, that asserted "Jones has a 'chronic condition that affects his balance and gait' and requested that *retaining wall stair rails* be installed 'to prevent further issues and to decrease the risk of hospitalization.'" Doc. 40-14 ¶ 17 (quoting Doc. 40-11) (emphasis added). Of course, as Jones admits and as photographs of the property show, that rail already exists. *Id.* (citing 40-4). That same day, Jones produced a second note, allegedly from the same nurse practitioner (the signature does not appear to match the signature on the first note), that stated "*retaining wall rails* should be installed for the same reasons listed in the original note."[4] *Id.* ¶ 19 (citing 40-13) (emphasis added). This note too was not authenticated.

Finally—and only in response to Featherstone's motion for summary judgment—Jones produced a previously undisclosed medical record, and two declarations, one by Jones himself and another by his live-in girlfriend, Jodi Bull. Docs. 42-2; 42-8; 42-9. Jones's medical record consists of four pages, which only show he had a diagnosis of "paranoid schizophrenia" and "other specified anxiety disorders" no sooner than August 17, 2022, although he was on medications to treat related symptoms as early as November 18, 2020. Doc. 42-2 at 3, 5. Jones did not provide a custodian's verification

---

38-4 at 5-6. And, as noted by Featherstone in their motion to quash, "each of Jones'[s] requests seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Doc. 38 at 2; *see* Doc. 38-4. The Court agrees. Accordingly, Featherstone's motion to quash (Doc. 38) is **GRANTED**, and Jones's motion to strike (Doc. 39) is **DENIED**.

[4] In a further attempt to prove his alleged mental and physical ailments, Jones moved for a Court ordered mental and physical examination pursuant to Rule 35 of the Federal Rules of Civil Procedure. Doc. 45. That Rule provides that a district court may order a party whose physical condition is in controversy to submit to a physical or mental examination by a licensed or certified examiner. Fed. R. Civ. P. 35(a). But "Rule 35 does not authorize a party to move to obtain a physical or mental examination of himself." *Haley v. Blackwood*, 338 F.R.D. 512, 515 (N.D. Fla. 2021). Accordingly, Jones's motion (Doc. 45) is **DENIED**.

authenticating and establishing the admissibility of the medical record.  With respect to the declarations, Jones avers "he is willing to pay for modification/accommodation" and Bull states "Jones doesn't mind paying for the modification now that he fully understands the law."[5]  Docs. 42-8 ¶ 1; 42-9 ¶ 6.

## II. STANDARD[6]

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P.

---

[5] Jones also moved to file a surreply and attached his proposed surreply to that motion.  Docs. 46; 46-1.  Although surreply briefs are disfavored under the local rules, and if a party is to so move, the "proposed surreply brief shall not accompany the motion," the Court, ever cognizant of Jones's pro se status, will allow it.  M.D. Ga. L.R. 7.3.1(B)-(C).  Jones's motion (Doc. 46) is **GRANTED**.

[6] Jones twice moved for summary judgment before discovery had commenced.  Docs. 12; 20; 24.  Because Featherstone had yet to be served when Jones filed his first motion, the Court denied that motion without prejudice.  Doc. 16.  Undeterred, Jones filed a second motion for summary judgment which merely regurgitated the allegations in his amended complaint and argued he was entitled to judgment as a matter of law.  Docs. 20; 20-1.  Nonetheless, the Court reserved ruling on that motion to allow Jones a chance to amend, and Featherstone a chance to respond once discovery was complete.  Doc. 23.  But, as noted in Featherstone's response, Jones's second motion for summary judgment "is improper, in that pleadings are not specifically listed in F.R.C.P. 56(c)(1)(A) nor do Jones'[s] pleadings meet the requirements of an affidavit or declaration pursuant to F.R.C.P. 56(c)(4)."  Doc. 36 at 2 n.2.  Accordingly, Jones's motion for summary judgment (Doc. 20) is **DENIED**.

56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving

party is not required to 'support its motion with affidavits or other similar material

*negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four*

*Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to

the district court—that there is an absence of evidence to support the nonmoving party's

case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the

movant may provide "affirmative evidence demonstrating that the nonmoving party will

be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's

showing "by producing … relevant and admissible evidence beyond the pleadings."

*Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011)

(citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if

the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed

fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to

address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court

may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).

However, "[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge …. The

evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor."  *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Jones's FHA Accommodation Claim Fails

This case began when the Court granted Jones leave to proceed *in forma pauperis* and allowed his FHA failure-to-accommodate claim to proceed after frivolity review.[7]  Doc. 3.  With the benefit of Jones's amended complaint and discovery, it is now apparent that Jones's requested retaining wall rails constitute a request for modification rather than a request for accommodation.

The FHA prohibits housing discrimination based on an individual's disability.  42 U.S.C. § 3604.  For purposes of the FHA, discrimination includes:

> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted[;]
>
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(3).  The FHA's implementing regulations define "modification" as "any change to the public or common use areas of a building or any change to a dwelling unit."  24 C.F.R. § 100.201.  According to the United States Department of Housing and Urban development:

> Under the Fair Housing Act, a reasonable modification is a structural change made to existing premises, occupied or to be occupied by a person with a disability, in order to afford such person full enjoyment of the premises. Reasonable modifications can include structural changes to interiors and exteriors of dwellings and to common and public use areas. Examples include the installation of a ramp

---

[7] The Court dismissed Jones's FHA retaliation claims on failure to state a claim grounds.  Doc. 3.

into a building, lowering the entry threshold of a unit, or the installation of grab bars in a bathroom.

Dep't of Housing & Urban Dev., Reasonable Accommodations and Modifications, https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accommodat ions_and_modifications (last visited Feb. 16, 2023).

The FHA regulations do not define "reasonable accommodation," but do provide two examples of when a building-owner would violate the FHA's reasonable accommodation provision: (1) where a building with a "no pets" policy refuses to permit a blind person to live in an apartment with his seeing eye dog; and (2) where a building-owner or manager refuses to provide an individual who is unable to walk more than a short distance with a reserved parking space near his unit. 24 C.F.R. § 100.204. Additionally, according to HUD:

> A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with disabilities to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces, or to fulfill their program obligations. Please note that the ADA often refers to these types of accommodations as "modifications."

> Any change in the way things are customarily done that enables a person with disabilities to enjoy housing opportunities or to meet program requirements is a reasonable accommodation. In other words, reasonable accommodations eliminate barriers that prevent persons with disabilities from fully participating in housing opportunities.

Dep't of Housing & Urban Dev., Reasonable Accommodations and Modifications, https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accommodat ions_and_modifications (last visited Feb. 16, 2023).

Because Jones's request to install rails in front of his unit is a structural change, specifically to the shared retaining wall in front of Jones's duplex, such a request was a request for modification rather than a request for accommodation. *Alonso Cano v. 245 C & C, LLC*, 2019 WL 11769102, at *12 (S.D. Fla. Nov. 25, 2019). And even if the rails did exist at one point, as Jones sometimes contends (Doc. 35 at 95:10-18), a request to

repair or replace the retaining wall rails remains a request for modification.  *Weiss v. 2100 Condo. Ass'n, Inc.*, 941 F. Supp. 2d 1337, 1344 (S.D. Fla. 2013) ("a request for (re)construction or repair is more appropriately a request for a modification than an accommodation.").  To the extent Jones maintains Featherstone's refusal to install retaining wall railings constitutes a failure-to-accommodate claim under the FHA, that claim fails.[8]

## B. Jones's FHA Modification Claim Fails

To prevail on a 42 U.S.C. § 3604(f)(3)(A) claim, Jones must establish that (1) he is disabled or handicapped within the meaning of the FHA; (2) he requested a modification of the premises; (3) such modification was reasonable; (4) such modification was necessary to afford full enjoyment of the premises; (5) Featherstone refused to permit the modification to be made at Jones's expense; and (6) Featherstone knew or should have known about Jones's disability at the time of the refusal.  *Johnson v. Jennings*, 772 F. App'x 822, 825 (11th Cir. 2019); *Sackman v. Balfour Beatty Communities, LLC*, 2014 WL 4415938, at *5 (S.D. Ga. Sept. 8, 2014).  Here, Jones's modification claim fails because the record, viewed in the light most favorable to Jones, fails to establish he is disabled within the meaning of the FHA or that Featherstone knew of Jones's alleged disability at the time of the alleged refusal, fails to establish the requested retaining wall railings were reasonable or necessary, and fails to establish Jones was willing to pay for the retaining wall railings.

---

[8] Featherstone's brief in support of its motion for summary judgment (Doc. 40-1 at 4, 13-15) also addresses FHA accommodation, modification, and retaliation claims that Jones raised in separate lawsuit before the Court.  *Jones v. Featherstone Condominium Homeowners Association, Inc.*, 5:22-cv-320-MTT (M.D. Ga. Sep. 6, 2022).  Because the Court dismissed that case on frivolity review, the Court need not address those claims again here.

*1. Jones Fails to Establish He Has a Disability Under the FHA*

"An individual is handicapped, for the purposes of the FHA, if he has (a) 'a physical or mental impairment which substantially limits one or more of such person's major life activities,' (b) 'a record of such impairment,' or (c) is 'regarded as having such an impairment.'" *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) (quoting 42 U.S.C. § 3602(h)).  "If [Jones] was not 'disabled or handicapped within the meaning of the FHA,' all other arguments are irrelevant as the first element of [Jones's] FHA claim remains unsatisfied." *Peklun v. Tierra Del Mar Condo. Ass'n, Inc.*, 2015 WL 8029840, at *8 (S.D. Fla. Dec. 7, 2015).  "[M]erely noting the existence of a [mental or physical ailment], without more, does not constitute a disability within the meaning of the [FHA]." *Id.*

While Jones claims a laundry list of disabilities, he produced no documentation of his alleged disabilities to Featherstone by the time discovery closed.  Doc. 40-14 ¶¶ 10-15.  That alone is enough for Jones's FHA modification claim to fail.  *Josendis*, 662 F.3d at 1315.  Nevertheless, given Jones's pro se status, the Court will address Jones's deposition testimony, the inadmissible medical record, and the other documents Jones improperly introduced after discovery was complete.

Jones made two things clear at his deposition.  First, Jones confirmed his "paranoia" is the basis for his requested modification of the retaining wall.  Doc. 35 at 50:6-10.  Jones also made clear that "I got gout but I don't get disability for that."  *Id.* at 77:20-21.  And even if he did, Jones admitted he never premised any of requests from Featherstone on his ambulatory difficulties; according to Jones's own testimony he can walk quite well.  *Id.* at 77:22-24, 70:3-5 ("I'm in and out all night just walking up the

sidewalk from the steps back to my front door or in the backyard.").  So even if the Court were to consider the October 20, 2022 unauthenticated letters from an alleged nurse practitioner that vaguely asserted Jones has a "chronic condition that affects his balance and gait," that does not help him because his modification request to Featherstone concerned his "paranoia," a completely unrelated condition.  *Hawn*, 347 F. App'x at 468.

The medical records—which Jones only disclosed in response to Featherstone's motion for summary judgment—underscore the frivolity of Jones's position.  *See* Doc. 42-2.  According to those records, Jones was diagnosed with "paranoid schizophrenia" and "other specified anxiety disorders" on August 17, 2022, over a year after Jones requested Featherstone modify the retaining wall railings based on that alleged condition.  Docs. 40-14 ¶¶ 4-5; 42-4 at 3.  And even if Jones had that diagnosis at the time he requested the retaining wall railings, merely noting the existence of a mental or physical ailment is insufficient to constitute a disability under the FHA.  *Peklun*, 2015 WL 8029840, at *8.  In short, Jones's FHA modification claim fails because he has not produced evidence that he is disabled within the meaning of the FHA.

*2. Jones's Requested Modification is Neither Reasonable nor Necessary*

Even if Jones did produce colorable evidence of a qualifying disability, Jones has failed to show the requested retaining wall railings—which Jones contends were needed to prevent either him or his relatives from falling while "playing catch"—were reasonable and necessary.  The FHA's reasonable modification provision requires only those "reasonable modifications" that "may be necessary to afford ... full enjoyment of the premises."  42 U.S.C. § 3604(f)(3)(A).  Jones admits "[t]here are other areas on the

property where Jones could easily 'play catch,' such as to the right of his unit or his large backyard."  Doc. 40-14 ¶ 6.  And even if there were no other places to "play catch," Jones still enjoys his unit the same as everyone else whose front yard is bordered by the retaining wall.  *Cf. Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008) (interpreting 42 U.S.C. § 3604(f)(3)(B) and stating "[i]n this context, 'equal opportunity' can only mean that handicapped people must be afforded the same (or 'equal') opportunity to use and enjoy a dwelling as non-handicapped people, which occurs when accommodations address the needs created by the handicaps."); *see also Tagliaferri v. Winter Park Hous. Auth.*, 486 F. App'x 771, 775 (11th Cir. 2012) ("The plaintiff was not denied an equal opportunity to access her apartment building because all residents were forced to navigate around the bicycles.").

### 3. Jones Refused to Pay for His Requested Modification

Unlike claims brought pursuant to the FHA's accommodation provision, a modification claim is only actionable if the requested modification is done "at the expense of the handicapped person."  42 U.S.C. § 3604(f)(3)(A)-(B); *Wood v. Briarwinds Condo. Ass'n Bd. of Directors*, 2009 WL 10668944, at *3 (S.D. Fla. Mar. 20, 2009), *aff'd*, 369 F. App'x 1 (11th Cir. 2010) (Because the plaintiff "has not alleged that he has offered to modify or replace the pool furniture at his own expense," his FHA modification claim fails.).  While Jones's post-deposition declaration states that "he is willing to pay for modification," and Jones's girlfriend similarly declared "Jones doesn't mind paying for the modification now that he fully understands the law," both declarations are textbook examples of sham affidavits.  Docs. 42-8 ¶ 1; 42-9 ¶ 6.  "The sham affidavit rule typically applies when an affidavit or declaration contradicts prior

deposition testimony." *Israel v. John Crane, Inc.*, 601 F. Supp. 3d 1259, 1269 (M.D. Fla. 2022). "[W]hen a party has given clear answers to unambiguous questions that negate the existence of any genuine issue of material fact, but that party attempts thereafter to create such an issue by contradicting the previous testimony without explanation," the "sham affidavits" are properly disregarded by the Court. *Id.*

Of course, that is exactly what Jones attempts to do here. During his deposition, Jones stated "I shouldn't have to pay nothing." Doc. 35 at 94:8-9. Nor could he, as Jones conceded he had not saved any money to pay for the railings, or even obtained an estimated cost for the project. Doc. 40-14 ¶ 24 (citing Doc. 35 at 93:19-94:5, 96:3-16). And if there was any doubt, Jones expressly told Featherstone's counsel on the day discovery closed that "I'm not helping [Featherstone] pay for nothing." *Id.* ¶ 25 (quoting Doc. 40-9). In short, the declarations of Jones and his girlfriend do not create a "genuine issue of material fact" as to Jones's willingness to pay for the retaining wall railings. Because Jones refused to do so, his FHA modification claim fails for that reason too.

## IV. CONCLUSION

For the reasons noted, Featherstone's motion for summary judgment (Doc. 40) is **GRANTED**.[9]

**SO ORDERED**, this 17th day of February, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[9] Accordingly, Jones's motion for oral argument (Doc. 43) is **DENIED** as moot.